UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br>Rick Sillman,<br>    Debtor.<br>―――――――――――――――――<br>JOHN WALKER,<br>    Appellant/Defendant,<br>    v.<br>RICK SILLMAN,<br>    Appellee/Plaintiff. | No. 2:14-cv-00587-MCE<br><br>**MEMORANDUM AND ORDER** |

Appellant John Walker ("Walker") was a creditor in a voluntary Chapter 13 bankruptcy case instituted by Appellee Rick Sillman ("Sillman"). Ultimately, Sillman filed an adversary action against Walker and another individual who is not a party to this appeal. The bankruptcy court[1] ruled in favor of Sillman and against Walker; that decision is the subject of this appeal.

---

[1] A number of bankruptcy judges presided over various aspects of the underlying case. For simplicity, this Court refers to the bankruptcy court and its judges generically.

1

## BACKGROUND

This case presents a tortured set of facts. On February 9, 2009, Sillman, represented by counsel, commenced his voluntary Chapter 13 case, presumably to forestall a foreclosure sale of his residence. Walker asserted a secured claim in the amount of $51,000 over real property containing that residence ("the Property"), and on March 9, 2009, Walker filed a pro se motion for relief from the automatic stay. Walker's motion, however, was deficient in a number of ways, including the fact that he failed to pay the applicable filing fee. Accordingly, the bankruptcy clerk issued an order to show cause as to why Walker's motion for relief from the automatic stay should not be dismissed.

A hearing on the order to show cause was held on March 31, 2009. Unfortunately, all attempts to determine what precisely occurred at the hearing have been unsuccessful because there is no transcript, neither the court reporter nor her notes can be located, no civil minutes were prepared or filed, and the judge's hearing notes provide no information as to who attended the hearing or what representations were made at that time. It appears, however, that neither Sillman, his Chapter 13 counsel nor Walker appeared. At the hearing, the presiding judge mistakenly issued an order dismissing Sillman's Chapter 13 bankruptcy case rather than resolving Walker's motion for relief from the automatic stay. Thus, on April 3, 2009, an order dismissing Sillman's Chapter 13 case was entered.

On April 8, 2009, Walker conducted a non-judicial foreclosure sale on the Property and purchased it himself. Just one week later, on April 15, 2009, Sillman filed a motion to reconsider the dismissal and reinstate the bankruptcy case. On April 16, 2009, the bankruptcy court granted Sillman's motion to vacate the dismissal and reinstated the Chapter 13 case. On the same day, the deed from the foreclosure sale was recorded. Undisputed testimony demonstrates that Sillman's bankruptcy counsel contacted Walker and that the parties agreed to execute a stipulation rescinding the foreclosure sale, since

the April 3, 2009, dismissal order was unquestionably issued in error. In the meantime, however, Sillman continued making plan payments and the Trustee continued to pay Walker $380.00 monthly. Those payments remained ongoing through approximately December 2009. Despite Walker's apparent agreement to rescind the foreclosure sale through stipulation, no stipulation was ever filed and no deed of reconveyance correcting the real property records was recorded. Consequently, Sillman made payments as if he continued to hold title to the property for some eight months, despite the fact that the foreclosure deed naming Walker as the owner of the property was never rescinded.

On June 26, 2010, the Trustee filed a motion to dismiss Sillman's Chapter 13 case because he was delinquent $4,668.00 in plan payments and had not filed a motion to confirm his Chapter 13 plan. On July 30, 2010, the Trustee's motion was granted and Sillman's Chapter 13 case was dismissed. Following approval of the Trustee's final report and account, Sillman's Chapter 13 case was closed on October 25, 2010.

Subsequently, Walker (the putative owner of the property as a result of the foreclosure sale) pursued an unlawful detainer action against Sillman, who was still residing on the Property, in state court. In response, Sillman sued Walker, also in state court. Walker ultimately prevailed in his unlawful detainer action and took possession of the Property. He subsequently demolished the structure where Sillman had lived.

On October 27, 2011, almost exactly a year after Sillman's Chapter 13 case was closed, he filed a motion to reopen his bankruptcy case to adjudicate whether the foreclosure sale was void as a matter of law. Over Walker's pro se objection, the bankruptcy court granted Sillman's motion and reopened the bankruptcy case to determine the validity of the foreclosure sale as it relates to the automatic stay.

Subsequently, the court held a hearing on Sillman's motion to void the foreclosure sale and denied the motion without prejudice subject to Sillman filing an adversary action. On January 19, 2012, Sillman filed an adversary action against Walker and Lisa Talcott (Talcott is not a party to this appeal).

///

On June 24, 2013, August 29, 2013, and November 7, 2013, the bankruptcy court presided over a trial on whether the foreclosure sale violated the automatic stay.  In a Memorandum Opinion and Decision filed on January 21, 2014, that court found that the April 3, 2009, order dismissing Sillman's Chapter 13 bankruptcy case was void.  The court also determined that the foreclosure sale violated the automatic stay and Sillman was and remains the legal owner of the Property.  It further found that Walker willfully violated the automatic stay, entitling Sillman to damages in the amount of $45,500.00.  That damages award consisted of actual damages in the amount of $24,000.00 for the dispossession of and loss of use of the Property, $14,000.00 for emotional distress, and punitive damages in the amount of $7,500.00.

Notwithstanding a number of irrelevant and/or waived arguments advanced by Walker on appeal, this case ultimately turns on three issues:  (1) whether the bankruptcy court properly determined that the April 3, 2009, dismissal was void, which rendered the foreclosure sale a violation of the automatic stay; (2) if so, whether the bankruptcy court properly determined that Walker's violation of the automatic stay was willful, thereby entitling Sillman to damages; and (3) if so, whether there was evidence to support the bankruptcy court's award of damages.  This Memorandum and Order addresses each issue in turn.

**STANDARD**

The applicable standard of review for adjudicating a bankruptcy appeal is identical to that employed by circuit courts of appeal in reviewing district court decisions.  See Heritage Ford v. Baroff (In re Baroff), 105 F.3d 439, 441 (9th Cir. 1997).  Thus, legal conclusions are reviewed de novo, and factual determinations are assessed pursuant to a clearly erroneous standard.  Murray v. Bammer (In re Bammer), 131 F.3d 788, 792 (9th Cir. 1997) (en banc).

///

4

**ANALYSIS**

**A.   Issue One: Whether the April 3, 2009, Dismissal Order Was Void**

Walker argues that the dismissal order was voidable, rather than void, and because Sillman never had the automatic stay reinstated nunc pro tunc, the foreclosure sale validly occurred while there was no automatic stay in effect.  There is little case law addressing this issue.

In finding that the dismissal was void, the bankruptcy court relied heavily on Great Pacific Money Markets. Inc. v. Krueger (In re Krueger), 88 B.R. 238 (B.A.P. 9th Cir.1988), a decision reached by the Bankruptcy Appellate Panel of the Ninth Circuit. In Krueger, like this case, a debtor filed for Chapter 13 relief to stay a foreclosure sale. When the judge called the debtors' case at a confirmation hearing, neither the debtors nor their counsel were in attendance; instead, only a creditor and the trustee were present.  Id. at 239.  The judge continued the hearing due to deficiencies with the plan, and said "[y]ou might give [debtors' counsel] a call" to make sure he had enough time to provide notice.  Id. at 240.  However, no notice of the continued hearing was given to the debtors or counsel.  In subsequent testimony the trustee indicated that she thought the court's order was directed to the creditor; similarly, the creditor believed the judge was addressing someone else.

When the debtors and their counsel failed to appear at the continued confirmation hearing, the court dismissed the case on the trustee's motion.  The creditor then conducted a foreclosure sale.  After the debtors learned of the dismissal and sale, they moved to vacate the dismissal and to void the foreclosure sale.  The bankruptcy court vacated the order dismissing the case and reinstated it.  Another judge subsequently voided the sale and reverted the property to the debtors.

On appeal, the creditor argued that because the case had been dismissed, the bankruptcy court lacked jurisdiction over the debtors' property at the time the foreclosure sale took place and therefore the court could not exercise its equitable powers to set

5

aside the sale. The panel held that the order dismissing the case was void because the debtors were not afforded statutory or constitutional due process. Id. at 241. The panel noted that, under 11 U.S.C. § 1307(c), a Chapter 13 case can only be dismissed "after notice and a hearing" and that "after notice and a hearing" means "such notice as is appropriate in the particular circumstances and such opportunity for a hearing as is appropriate in the particular circumstances." Id. On a constitutional level, the court went on to recognize that "[t]he due process clause of the Fifth Amendment requires that due process be provided before property can be taken," and that a fundamental requirement of due process is "notice reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Id. Significantly, too, the Krueger panel unequivocally found that "[a]n order is void if it issued by a court in a manner inconsistent with [due process]." Id.

That panel went on to hold that it was inappropriate under the circumstances for debtors to be uninformed of the hearing at which their bankruptcy proceedings were dismissed. Moreover, the panel found that because the dismissal was void, the stay was continuously in effect from the date the petition was filed and the foreclosure sale was held in violation of the stay. As the panel noted, acts taken in violation of the automatic stay are generally deemed void and without effect. Id.

The facts of Krueger are on all fours with those confronted here. In this case, like Krueger, the bankruptcy court found that: (1) Sillman did not have appropriate notice; (2) his Chapter 13 case could be dismissed at an order to show cause hearing directed at a creditor's faulty filing; (3) absent such notice, the dismissal order was void and the automatic stay remained in effect when the foreclosure sale occurred; and (4) Walker therefore violated the automatic stay by proceeding with the foreclosure sale and selling

///

///

///

6

the property. The reasoning of Krueger consequently mandates that the dismissal order here, and the sale flowing therefrom, were void.[2]

Significantly, too, the Krueger panel's rationale is supported by other applicable precedent. In Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081 (9th Cir. 2000), the bankruptcy court vacated an order dismissing the case because the debtor was not provided notice of the two hearings at issue. On appeal, the Ninth Circuit relied on Krueger to conclude that because the order dismissing the bankruptcy case was void, acts taken by the creditor with regard to a foreclosure (in that case a payment to forestall the foreclosure sale) violated the automatic stay and were void as well. Id. at 1087. Moreover, in United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 270 (2010), the Supreme Court recently reaffirmed that a void order is a legal nullity. As a legal nullity, the erroneous dismissal order did not terminate the automatic stay so as to terminate either the automatic stay or the debtor's legal rights.

The Court consequently affirms the bankruptcy court's ruling that the dismissal order was void, such that the foreclosure sale purportedly made possible by termination of the bankruptcy proceedings and a lifting of the automatic bankruptcy stay was also without legal effect.

**B. Issue Two: Willful Violation**

Walker argues that even if the initial dismissal order was void and the foreclosure sale technically violated the automatic stay, the violation was not willful and therefore Sillman is not entitled to damages.

A "willful violation" requires a finding that "the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional." Pinkstaff v. United States (In re Pinkstaff), 974 F.2d 113, 115 (9th Cir. 1992). However, "[a] 'willful violation' does not require a specific intent to violate the automatic stay. Rather, the

---

[2] Walker argues that the court did not have the power to reopen the bankruptcy case under 11 U.S.C. § 350. Since it is undisputed that the dismissal order was erroneous, and since the parties themselves agreed to execute a stipulation rescinding the foreclosure sale conducted in the aftermath of that erroneous dismissal, Walker's argument in this respect patently fails.

1  statute provides for damages upon a finding that the defendant knew of the automatic
2  stay and that the defendant's actions which violated the stay were intentional." "Whether
3  the party believes in good faith that it had a right to the property is not relevant to
4  whether the act was 'willful' or whether compensation must be awarded." In re Bloom,
5  875 F.2d 224 (9th Cir. 1989), citing INSLAW, Inc. v. United States (In re INSLAW, Inc.),
6  83 B.R. 89, 165 (Bankr. D.D.C. 1988).

7        There is no dispute that Walker knew of the automatic stay initially; indeed, his
8  motion for relief from the stay led to the erroneous order of dismissal on April 3, 2009.
9  Additionally, as indicated above, Walker participated in the agreement to execute a
10 stipulation to rescind the non-judicial foreclosure sale. Regardless of which party failed
11 to follow through in preparing that stipulation, the burden is on the creditor, here Walker,
12 to determine the extent of the automatic stay and seeks such relief as is appropriate.
13 Collier on Bankruptcy, Sixteenth Edition, ¶ 362.02. This is hardly surprising since, as
14 one of the fundamental principles girding the Bankruptcy Code, "the automatic stay
15 requires a creditor to maintain the status quo ante and to remediate acts taken in
16 ignorance of the stay." Franchise Tax Board v. Roberts (In re Roberts), 175 B.R. 339,
17 343 (B.A.P. 9th Cir. 1994). The automatic stay consequently imposes an affirmative
18 duty to discontinue actions in violation of the stay. Sternberg v. Johnson, 595 F.3d 937,
19 944 (9th Cir. 2010). Here, as the bankruptcy court recognized, "the objective facts show
20 that Walker took no action to address the violation of the automatic stay or determine
21 what the effect was in conducting a non-judicial foreclosure sale after the issuance of the
22 void order dismissing the Chapter 13 case." Memorandum Opinion and Decision, In re
23 Sillman, United States Bankruptcy Court, Eastern District of California, ECF
24 No. 12-02023, 17: 20-24 (hereinafter "Order").

25       That court found that Walker willfully violated the automatic stay because, despite
26 having full knowledge that the order dismissing the case had been vacated and error
27 committed by the court, Walker (1) continued to press rights under the void deed to take
28 and retain possession of the Property, and (2) continued to accept plan payments even

after conducting the foreclosure sale. Walker did this despite being represented by two attorneys in his dealings with Sillman during the bankruptcy case, including with respect to the erroneous dismissal, and with regard to the unlawful detainer action against Sillman in state court along with Sillman's own state court action. Given those circumstances, the bankruptcy court did not clearly err in finding that Walker willfully violated the automatic stay.  11 U.S.C. § 362(k). Therefore, the bankruptcy court's ruling as to the second issue is also affirmed by this Court.

**C.  Issue Three: Damages**

The damages statute at issue provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees." 11 U.S.C. § 362(k)(1). As a general matter, then, the statute mandates actual damages. It also, in "appropriate circumstances," states that punitive damages may be recovered.

As outlined above, following a determination that Walker's violation of the automatic stay was "willful," the bankruptcy court awarded Sillman actual damages for loss of use of the Property as well as emotional distress. Punitive damages were also assessed.

Walker's primary argument on appeal is that there was no evidence in trial record to support the damages award. While the bankruptcy was candid about the difficulties Sillman had, as a pro se litigant, in presenting evidence, that contention overstates the case. First, it appears undisputed that Sillman continued to make payments to Walker, under the mistaken assumption that he still owned the property, in the amount of $380.00 monthly in accordance with his Chapter 13 plan payments. Those payments continued from approximately April of 2009, when the parties agreed to rescind the foreclosure sale, until at least December of 2009. Those payments therefore totaled some $3,420.00 that Sillman presumably would not have made had he known he had no ownership interest in the property.

///

Additionally, by pursuing an unlawful detainer action in state court premised on the erroneous premise that he owned the property, Walker dispossessed Sillman of the use of the property, ejecting him from the premises in approximately January of 2010. By the time the bankruptcy court's post-trial Order was issued on January 21, 2014, four years had passed. Although Walker contended at trial that the house occupied by Sillman was largely uninhabitable, making any damages for demolishing that structure minimal at best, Plaintiff argued that he received some $400.00 per month for renting space on the property to park a mobile home. He also claimed that he could have rented the property out for at least $750.00 per month, without utilities, although he otherwise presented no evidence to support those contentions. Order, 21:7-12 In weighing this testimony and the evidence that was presented, and in drawing from his own experience, the bankruptcy court found that "damages of $500.00 per month for each of the 48 months that Walker has wrongfully took and held this property is clearly reasonable." Id. at 27:12-14. It therefore concluded that "[t]here can be little dispute that even renting property in the Yankee Hill, California area [where the property was located] would be more expensive than $500.00 a month." Id. at 27:14-16. The court consequently calculated actual damages for the violation of the stay by Walker over the 48-month period in question as $24,000.00. Under the circumstances, this Court cannot conclude that the damage determination in that regard was clearly erroneous.

Actual damages for violation of the automatic stay also include damages for emotional distress, as appropriate. Dawson v. Wash. Mut. Bank (In re Dawson), 390 F.3d 1139, 1148 (9th Cir. 2004). For a debtor to establish such damages, he must: (1) suffer significant harm; (2) clearly establish that harm; and (3) demonstrate a causal connection between the significant harm and the violation of the automatic stay. Id. at 1149. Medical evidence of the requisite distress is not required; a court may award emotional damages where the circumstances make it obvious that a reasonable person would suffer significant emotional harm. Id., citing United States v. Flynn (In re Flynn), 185 B.R. 89, 93 (S.D. Ga. 1995). Here, the bankruptcy court made just such a

determination. It stated that "kicking a person out of his home and then actively keeping them from returning to their home for a period of some 48 months causes significant emotional distress." Order, 29:3-7. Again, the Court cannot find that his $14,000.00 emotional distress award, which equates to less than $300.00 a month when spread over 48 months, was clearly erroneous, particularly given that court's determination, based on his observations during the case, that Plaintiff was already plagued by mental health issues. Order, p. 29 n. 45.

That brings us to the final component of the damages award: the $7,500.00 awarded in punitive damages. While punitive damages are proper only in the face of some showing of reckless disregard for the law or with respect to the rights of others (Bloom, 875 F.2d at 228), a bankruptcy court nonetheless has considerable discretion in granting or denying punitive damages under 11 U.S.C. § 362(k)(1). In making that determination, the court must consider whether the circumstances of each particular case warrant such damages. Henry v. Assocs. Home Equity Servs. (In re Henry), 266 B.R. 457, 481-83 (Bankr. C.D. Cal. 2001). A creditor's good faith or lack thereof is relevant to this assessment. See Walls v. Wells Fargo Bank (In re Walls), 262 B.R. 519, 529 (Bankr. E.D. Cal. 2001). Although no fixed ratio or formula applies in properly calculating a punitive damages award, punitive damages must be proportional to the underlying compensatory damages and bear a reasonable relation thereto. Hudson v. Moore Business Forms, Inc., 836 F.2d 1156, 1163. That determination involves consideration of: (1) the nature of a defendant's acts; (2) the amount of compensatory damages awarded; and (3) the wealth of the defendant. Bauer v. Northeast Neb. Fed. Credit Union (In re Bauer), 2010 WL 6452899 at *13 (B.A.P. 9th Cir. 2010).

The bankruptcy court here concluded that "Walker willfully, intentionally, and with the assistance of counsel violated the automatic stay in dispossessing [Sillman] from possession of [the property] and retaining possession thereof" throughout the pendency of the adversary proceeding. Order, 32:10-13. While it noted that the dismissal of Sillman's Chapter 13 proceeding, and the subsequent foreclosure sale of the property,

may initially have been an unintentional violation of the automatic stay, Walker's subsequent conduct willfully and intentionally compounded that violation. Id. at 32:13-16. After the void foreclosure sale, he continued to accept payments as a creditor in the bankruptcy case even though by that time he ostensibly held title to the property. Then, once Sillman ceased making those payments, he changed tack and asserted his purported ownership rights by pursuing an unlawful detainer action. Significantly, the court, in observing the parties' conduct at trial, concluded that Walker engaged in this course of conduct "hoping or believing that [Sillman], due to [with respect to his] medical and emotional limitations, would be unable to assert [his] rights." Id. at 32:16-21. Under these circumstances, the court reasoned that were the court not to award punitive damages, "a green light would be given to creditors to risk violating the automatic stay if the dollar amounts at issue are large enough and they have a debtor who is legally, emotionally, or physically impaired." Id. at 32:24-33:3. In declining to permit such a green light, that court determined that punitive damages were necessary to deter such conduct in the future. Id. at 33:3-5. That decision survives appellate scrutiny at this juncture because this Court cannot conclude it was clearly erroneous.

      We next move to whether the $7,500.00 awarded in punitive damages is in and of itself clearly erroneous. As the bankruptcy court pointed out, with actual damages at $38,000.00, that figure is only 20 percent of such damages. That figure is hardly "grossly excessive" to the applicable interest in punishment and deterrence so as to implicate constitutional concerns. BMW of North America, Inc. v. Gore, 517 U.S. 559, 568 (1996). With respect to whether the punitive damages are proportional to Walker's financial condition, the Court notes that Walker lives in Montana and owns property in California. As that court observed, Walker has extensively litigated, with the assistance of attorneys, his contention that the void foreclosure sale transferred title in the subject property to him. Order, 34:19-23. Given the fact that Walker's secured claim in the property, as asserted in Sillman's bankruptcy proceedings, was $51,000.00, a $7,500.00 punitive damage award is only 14.7 percent of that obligation. Under those

circumstances, the Court concludes that vacating the punitive damages as awarded in this matter is not warranted.

**CONCLUSION**

For the reasons stated above, the bankruptcy court's decision in this matter is hereby AFFIRMED.

IT IS SO ORDERED.

Dated: March 20, 2015

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT